## UNITED STATES v. DUDLEY.

### No. 6904.

Circuit Court of Appeals, Ninth Circuit.

April 17, 1933.

H. E. Ray, U. S. Atty., and Sam S. Griffin, W. H. Langroise, and Ralph R. Breshears, Asst. U. S. Attys., all of Boise, Idaho.

Hawley & Worthwine, Jess B. Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Appeal from judgment entered on verdict for plaintiff in an action on a war risk insurance certificate.

1. Defendant complains of the denial of its motion for directed verdict. The jury found plaintiff totally and permanently disabled May 18, 1919, the date of his discharge (his policy of insurance was in effect, by payment of premiums, until October 31, 1920). The question presented is whether there was any substantial evidence to support the verdict.

■ Plaintiff's testimony tended to show the following facts: He was in the front lines in France fifteen days, receiving a slight gunshot wound; during thirty-six hours of this time he was on stretcher duty without relief. While at the front he had an attack of dysentery; he received treatment at the infirmary and later spent three weeks in casual camp under medical care. Thereafter, he spent four months on sick call, never being restored to full military duty. The dysentery was cured, but during the remainder of his military service and since, he has suffered constantly from chronic constipation, abdominal pains, nausea, nervousness, and insomnia. The abdominal soreness was somewhat, but not entirely, relieved by an appende-

tomy in 1921; the other afflictions have continued unabated. Despite a strict diet, not a week has passed since he left the army without an attack of vomiting, frequently accompanied by a fainting spell.

Before entering the army he operated a 240-acre ranch, supervising farm work and sheep herding. Since discharge, his condition has prevented successful resumption of his former occupation, even on a small scale. During 1919 and the first part of 1920, he helped on his father's farm but became exhausted easily and could not work for more than an hour or two at a time. After marriage in 1920, delayed until then because of his health, he tried to farm a 10-acre plot but had to hire help which, but for his condition, would have been unnecessary. He had his appendix removed in 1921, spent several months in hospitals, the rest of the time convalescing, but with little relief. In 1922 and 1923, he again tried to farm small acreages; 1926 and 1927, acted as overseer for farming operations of his father.

He made no money in any of these ventures. In all he was painfully handicapped by his condition; his work was frequently interrupted by vomiting, he became exhausted easily, could not sleep, and was extremely nervous.

In 1924, 1925, and 1928, his condition was such that he did practically nothing. In 1929 he secured a contract to purchase 20 acres of a tract by improving it but lost the contract because his health prevented his doing the work. August to November of that year he spent in a government hospital. Thereafter, helped by a veterans' welfare agency, he secured light clerical work at $80 per month in the Idaho Department of Law Enforcement. The salary was increased to $110 and then to $125. After about fifteen months, a change in administration caused him to lose his job. While holding it, he missed on the average five days each month because of his condition, in addition to time lost through leaving early in order to visit his doctor. His work was checking statistics; according to testimony of the Secretary of State, who employed him, "he was protected more than any other man * * * in the office"; according to the Assistant Secretary, "his work was so arranged that he did only * * * work which he could do without heavy labor." Notwithstanding the character of the employment, it frequently exhausted him so he could not eat or sleep. Since losing that job, he tried to make and sell potato flakes in his home but had to give that up because of his health.

Prior to 1925, he supported himself on money he had saved before entering the service. Since 1925, he has "lived mostly on charity except what help * * * [his] folks gave" him.

In most important respects, plaintiff's testimony was corroborated and substantiated not only by relatives but by friends, employees, and employers. There was abundant testimony to the marked change in him after his return from the army, to the general physical disabilities which are set forth in his testimony, to his inability to work, to the fact that his condition has been practically unchanged since his discharge.

According to the medical testimony in the case, colitis was the root of plaintiff's troubles. Not even defendant's doctors held out or had held out any substantial hope for cure, although they did assert that he neither was nor had been totally and permanently disabled. Three doctors testified for plaintiff. One of them had diagnosed his principal ailment as colitis as early as 1920, and testified that he was at that time totally and permanently disabled. In answer to a hypothetical question based on facts substantially like those testified to by plaintiff, he stated that he was totally and permanently disabled at the time of his discharge. Another doctor, who examined plaintiff in order to testify, concurred in this judgment and testified, too, that plaintiff was at present totally and permanently disabled. A third testified that plaintiff was totally and permanently disabled in 1920, when he first examined him, as well as during the entire time he treated him, which included the period of employment by the state. All three of plaintiff's doctors deemed rest the essential treatment for his condition; a doctor who testified for defendant had also prescribed rest at one time.

■■ The question before us is whether or not this evidence is so substantial as to justify submission of the case to the jury. We do not weigh the evidence; what our verdict would have been as jurymen is immaterial. In our judgment, we cannot say that the jury could not reasonably find, as they have found, that at his discharge, plaintiff was totally and permanently disabled; that is that he was not only then totally disabled from following continuously a gainful occupation, but also that that condition was then reasonably certain to continue during his lifetime. See United States v. Riley, 48 F.(2d) 203 (C. C. A. 9, 1931); United States v. Griswold, 61 F. (2d) 583 (C. C. A. 9, 1932). Plaintiff's work record "is not sufficient to overturn the

effect of the evidence as to the character of his disabilities." See United States v. Baxter, 62 F.(2d) 182 (C. C. A. 9, 1932). The physical facts as revealed by X-rays do not, as contended, contradict the testimony of plaintiff's witnesses. While there was some conflict in the medical testimony concerning the X-rays, it was for the jury to determine which was right. It was likewise their province to weigh other inconsistencies, including plaintiff's formal statement of no disability, at discharge. United States v. Albano (C. C. A. 9th) 63 F.(2d) 677, February 20, 1933.

2. While evidence of insured's wealth or his poverty, his income or his expenses, as such, is ordinarily of no materiality and may in some cases cause sympathy or prejudice to influence the verdict, we cannot say in this case, in view of the testimony admitted as to his prewar success, that evidence of his nine-year postwar failures, due according to his testimony to his condition, was improperly received over objection on this ground. It fortifies his testimony as to the extent of his then disabilities, and testimony as to such later conditions may well tend to confirm, or, on the contrary, to refute the testimony, lay and medical, as to his condition on discharge. In any event, in view of other similar evidence received, without objection, no prejudice resulted from its admission.

3. The instructions given fully covered the case; there was no error in refusing to instruct in the form requested. See Snodgrass v. United States, 61 F.(2d) 99, 101, (C. C. A. 9, 1932).

Judgment affirmed.