## UNITED STATES v. JENSEN.
### No. 7069.

Circuit Court of Appeals, Ninth Circuit.
June 19, 1933.

H. E. Ray, U. S. Atty., and Sam S. Griffin, W. H. Langroise, and Ralph R. Breshears, Asst. U. S. Attys., all of Boise, Idaho, for the United States.

Hawley & Worthwine, Jess Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Appeal from judgment rendered on verdict for plaintiff in an action on a war risk insurance certificate. The sole question presented is whether or not the District Court erred in denying defendant's motion for a directed verdict, based upon the lack of any substantial evidence of total and permanent disability at the time the insurance otherwise lapsed.

Plaintiff, who enlisted December, 1917, was discharged June, 1919; payment of premiums kept the insurance in effect until August, 1919.

From plaintiff's evidence, as presented by his own testimony and corroborated in most material respects, the jury could have found the following facts: Plaintiff was a corporal in the engineers, an extremely big and very powerful man, the largest in his company. At and before his entrance into the service he was in excellent physical condition.

In the fall of 1918 he was gassed twice, once as a result of a gas shell exploding close to him. Thereafter he lived under highly unsanitary conditions, was exposed to continuous rain, and had to sleep in wet clothing.

After the gassing, plaintiff vomited, coughed, and was dizzy and he received first aid. Subsequently he saw his company doctor, and later, while on furlough, saw a French doctor. He suffered severe pain in his chest, expectorated blood and black-streaked matter, lost weight, and was short of breath. His general health was broken. From shortly after the Armistice until his company left France the following May, he was on sick call nearly every week; during that period he suffered with severe colds, and was plainly a sick man.

Before his army service he was a construction foreman working all the time. Since discharge, although he has held several jobs, his health has not improved. He worked as a road construction foreman four months in 1919, three months in 1920, eight months in 1921, six months in 1922, and nine months in 1923. But he worked under great handicap and most of the time would merely sit and direct his men. Sometimes one of his men would take over his duties entirely. While working he coughed continuously and spat blood; he had no wind and had frequent fainting spells. His lungs hurt him all the time. He couldn't eat regularly and vomited as often as three or four times daily. During these months on the road, he visited doctors more or less regularly; several times during this five-year period he was entirely unable to work for months at a time, and even during the months that he was on the pay roll he missed considerable time from his work so that although his regular salary was $150 to $200, he frequently received less.

In the fall of 1923 he entered a hospital where he remained for two years, except for a short period when he was in business college, taking vocational training. After a few months of such training he broke down and returned to the hospital. When he left the hospital he was engaged three weeks in road work, again broke down, and spent another year in a hospital.

Thereafter, in 1927, he was employed as a

policeman in Boise. He held this job for twenty-seven months, earning nearly $3,500. But his superiors, realizing that he was a sick man, made his work as easy as possible. Frequently he could not even discharge such light duties as were assigned to him. He was indulged in in this way because he was an ex-service man and a good officer. But his condition made the police force short handed and finally another man replaced him.

Since leaving the police force he has spent two years in hospitals and has done no work whatsoever.

In addition to his hospitalization and other medical treatment, he has frequently sought relief by a change of climate but without success. .

A doctor who testified for plaintiff stated that he was totally and permanently disabled when he treated him in 1929. Another doctor who had treated plaintiff since 1931 testified that he was now permanently and totally disabled. In answer to a hypothetical question based on facts substantially like those detailed above, he testified that plaintiff was totally and permanently disabled at the time of his discharge, giving as the cause bronchitis, bronchiectasis, and asthma resulting from exposure following gassing. He also testified that these were the ailments with which plaintiff was presently suffering.

Defendant's expert witness, a doctor who examined plaintiff when he was at the Veterans' Hospital in 1924 and 1925, testified that he was not then totally and permanently disabled; that he suffered only from one of the most common causes, chronic bronchitis.

In our judgment there was substantial evidence of permanent and total disability at discharge, although the medical testimony was in conflict as to the character of plaintiff's disabilities. Defendant's expert who testified that it was chronic bronchitis and not the much more serious bronchiectasis, stated that an important difference between the two ailments was in the amount of sputum produced; that in bronchiectasis as much as four to six ounces might be raised in twenty-four hours. This testimony with that of plaintiff's sister to the effect that she observed him during a visit in 1921-22 raise as much as a half cupful of sputum in eight hours, is strong evidence that at least in 1921 he had the more serious bronchiectasis.

While there is some testimony of plaintiff's own witnesses indicating that his condition became progressively worse after discharge, we believe that the case is to be differ-

entiated from United States v. Hainer, 61 F. (2d) 581 (C. C. A. 9, 1932). The evidence justified a finding that plaintiff suffered a virtually complete breakdown in France which persisted after discharge; that while his condition may have become worse, the essential character of his ailments did not change.

Plaintiff's expert testified positively in answer to the hypothetical question that he was totally and permanently disabled at the critical date. We cannot regard this testimony as without substance [United States v. Francis (C. C. A. 9) 64 F.(2d) 865, April 24, 1933] unless defendant is right in contending that the work record is entirely inconsistent with such testimony.

The work record is impressive. From shortly after discharge until the end of 1923, plaintiff worked 30 months at a salary of $150 to $200. From 1927 to 1929 the work records show steady employment for 27 months, with earnings of nearly $3,500.

But the work from 1919 to 1923 was not continuous. His afflictions made work not only difficult (see United States v. Hainer, supra) and painful [United States v. Kims, 61 F.(2d) 644 (C. C. A. 9, 1932)], but also "seriously militate[d] against his following his occupation substantially continuously." See U. S. v. Kims, supra, at page 648 of 61 F.(2d). The case is similar in this respect to United States v. Dudley (C. C. A. 9) 64 F. (2d) 743, April 17, 1933, and United States v. Griswold, 61 F.(2d) 583 (C. C. A. 9, 1932).

The employment as police officer was like Dudley's engagement in the Secretary of State's office (U. S. v. Dudley, supra). Although the work record shows that the employment was continuous, the work itself was not. In each case the jury could have found that the veteran's services were retained because of sympathy. In each case there was evidence that the services exacted were for less than is usually required in such employment.

■■ The vocational training record which defendant argues is conclusive that plaintiff was not then permanently disabled (see U. S. v. Clapp, 63 F.(2d) 791 (C. C. A. 2, 1933) is, like the work record, evidence for the jury to weigh. The same is true of the formal statement of no disability at discharge. U. S. v. Dudley, supra.

■ Defendant contends that plaintiff's expert retracted his testimony in important respects on cross-examination. The alleged retraction is found in answers to a hypothetical

question by defendant. Some of the additional hypothetical facts were without foundation in the evidence. An expert's answer to such a hypothetical question constitutes no retraction.

Judgment affirmed.