## UNITED STATES v. ALGER.
### No. 7217.

Circuit Court of Appeals, Ninth Circuit.
Jan. 24, 1934.

John A. Carver, U. S. Atty., E. H. Casterlin and Frank Griffin, Asst. U. S. Attys., and R. L. Slaughter, Atty., U. S. Department of Justice, all of Boise, Idaho, and R. L. MacCutcheon, Atty., U. S. Department of Justice, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., for the United States.

Harry Benoit, of Twin Falls, Idaho, and Hawley & Worthwine, Jess Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

While participating in a raid upon an enemy machine gun on October 6, 1918, during the World War, plaintiff was struck from the side by a bullet which tore across his back from the right to a point about two inches to the left of his backbone, ripping through the long back muscle, and taking away a piece of the muscle and part of the bone. He fell, upon being hit, and after a moment dragged himself to a shell hole and shortly thereafter crawled toward the American lines, where he was brought in by a "buddy." His legs were paralyzed for 48 hours following the injury. After being bandaged at a first-aid station he was removed to a base hospital and from that one to another. Gradually the wound healed, scar tissue nearly filling the hollow of the wound. He was brought back to the United States and discharged at Camp Bowie, Tex., in April of 1919, where he answered "no" to the question of whether or not he had any disability or impairment of health.

This appeal is from a judgment in favor of the insured under a policy of war risk insurance. The refusal of the trial court to direct a verdict for defendant is assigned as error. Premiums had been paid upon his $10,000 policy of war risk insurance to include the month of April, 1919, and therefore the date of lapse was May 31, 1919.

Appellant attacks the opinions of two experts who, after hearing the history of the case read, answered "yes" to the question whether the insured was totally and permanently disabled at the time of discharge. Cases are cited to the effect that the opinion of an expert, when opposed to undisputed facts and common sense, will not support a verdict. The work record of appellee, and his course in vocational training, are pointed out as facts contradictory of the opinion of the experts.

Appellee was an uneducated man (seventh grade grammar school at sixteen years of age) and unsuited to office work or work requiring mental training. He had been a farmer before entering the service and apparently depended, to a great extent at least, upon his back for his livelihood. Unsuited and unfitted by intellectual and physical handicaps for either office work or farming, he was placed by the government in training as an

automobile mechanic, a task obviously beyond his capacity, for his story tells of hours and days when he was unable to keep up with his work—when he says he was forced by pain to cease effort and rest. He testifies that the strength of his back is gone and that the hard scar tissue there pains him constantly.

One of the witnesses tells of Alger fainting while at work; others that he had to be helped in almost every undertaking.

■ Aside from his vocational training period, there is practically no work record, for he has not earned any substantial sums of money nor has the continuity or regularity of employment been such as to take him without the definition of total and permanent disability as set down by the courts. However, the work record is evidence for the jury to weigh. U. S. v. Jensen (C. C. A.) 66 F.(2d) 19, 20.

■ While in many cases evidence of an insured having taken vocational training may be an indication or even proof that he is not totally and permanently disabled, it is not conclusive in all cases. It must be remembered that vocational training was in the nature of schooling and necessarily not so exacting nor so intense as actual employment in such work. The same may be said of placement training where salary was paid by the government and the student or helper was not watched so closely nor was so much expected of him as would be the case if the individual was being paid on the basis of work accomplished. Vocational training was but an effort upon the part of the government to make one, who had been deprived of his means of livelihood, self-supporting, and assurance that it is or will be successful does not follow from its commencement. We are agreed that in many and most instances vocational training and placement training are inconsistent with total and permanent disability, but the rule is not inflexible, and here we conceive the case to be without the rule. See U. S. v. Jensen, supra.

The Supreme Court of the United States, in the recent case of Lumbra v. U. S., 54 S. Ct. 272, 78 L. Ed. —— (decided January 8, 1934), states: "The phrase 'total permanent disability' is to be construed reasonably and having regard to the circumstances of each case. * * * The various meanings inhering in the phrase make impossible the ascertainment of any fixed rules or formulæ uniformly to govern its construction. That which sometimes results in total disability may cause slight inconvenience under other conditions. Some are able to sustain themselves, without serious loss of productive power, against injury or disease sufficient totally to disable others." See, also, Carter v. U. S. (C. C. A.) 49 F.(2d) 221; Ford v. U. S. (C. C. A.) 44 F.(2d) 754; and the case of U. S. v. Raser, 45 F.(2d) 545, decided by this court, which is similar to the case at bar and authority for this decision.

■ The record discloses some conflict in the opinions of the expert witnesses, but such disagreement together with the weight to be given the opinion evidence were all for the consideration of the jury. U. S. v. Francis (C. C. A.) 64 F.(2d) 865. In that case the court said at page 867: "Where the parties permit an expert to state his opinion in general terms as to the incapacity of a person to work without injury to his health, it is very rarely that an appellate court would be justified in holding that the conclusion thus adduced is of no substance and so baseless as to afford no support for a verdict." See, also, U. S. v. Burleyson (C. C. A.) 64 F.(2d) 868, 872.

■■ This court has many times held that it is not within its province to weigh the evidence. U. S. v. Dudley (C. C. A.) 64 F.(2d) 743, 744. Judge Sawtelle, in Sorvik v. U. S. (C. C. A.) 52 F.(2d) 406, 410, formulated the rule in the following language: "The test to be applied in such a case, of course, is not whether the evidence brings conviction in the mind of the trial judge; it is 'whether or not the evidence to support a directed verdict as requested, was so conclusive that the trial court in the exercise of a sound judicial discretion should not sustain a verdict for the opposing party.' [Cases cited.]" See, also, Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Travelers Ins. Co. v. Randolph (C. C. A.) 78 F. 754.

■ The case was properly submitted to the jury, and the refusal of the trial court to grant the motion of defendant for a directed verdict was not error.

Affirmed.