## DEADRICH v. UNITED STATES.*
### No. 7390.

Circuit Court of Appeals, Ninth Circuit.
Jan. 7, 1935.

See, also (C. C. A.) 67 F.(2d) 318.

Ham & Taylor, of Las Vegas, Nev., and Louis R. Deadrich, of Oakland, Cal., for appellant.

E. P. Carville, U. S. Atty., of Reno, Nev., Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., and Madison L. Hill, Atty., Bureau of War Risk Litigation, of Los Angeles, Cal., for the United States.

Before WILBUR and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment on directed verdict in favor of defendant in a war risk insurance case.

The action was to recover for total and permanent disability of the plaintiff. The complaint alleged and the answer admitted that the insured was in the service from February 15, 1915, to March 29, 1919; that the insurance policy took effect February 18, 1918, and continued in full force and effect with the payment of premiums to June 1, 1919, the only issue being whether or not the plaintiff became permanently and totally disabled during the life of this policy, and the only question open for review on this appeal is whether or not there was sufficient competent evidence of total and permanent disability on June 1, 1919, to warrant submission of the case to the jury.

Henry S. Deadrich enlisted in the army in February, 1914, and was honorably discharged March 29, 1919. Shortly after his entrance into the service he became the victim of pneumonia and almost immediately upon recovery he contracted measles and again, in May of 1919, he was hospitalized because of pneumonia. After recovery he

*Rehearing denied March 1, 1935.

sailed for France and there, while troops were being instructed in the use of gas guns, a shell exploded and he was exposed to the poisonous gases. His testimony is that prior to his illness with pneumonia he was well and strong, and that since then he has been weak, afflicted with a severe cough and heart trouble; that after return from France and being hospitalized in the east and at Camp Kearney, Cal., he was in the hospital at the Presidio in San Francisco until his discharge; that he then went home to Richmond, across the bay from San Francisco, where he stayed around the house unable to do anything, spending most of the time in bed; feeling better, he secured a position with the Standard Oil Company at Richmond, about three weeks after discharge. It was light work, but he says that he quit after about a month, because he "couldn't stand it." He consulted a doctor at Richmond in April, 1919, whose name he could not remember, who told him that his heart was affected and that he should rest and not do any work. He and his brother then went to the mountains for about six weeks. This improved his health somewhat, he says, and although he felt unable to work, he was compelled, out of necessity, to do so. He then went to Reno, Nev., where he worked for eight months selling and delivering spring water in bottles. While at Reno, in 1920, he consulted a doctor, who told him that his heart and lungs were weak and advised him to live out of doors as much as possible and do very little work. After this he secured a job taking care of cattle for a Mr. Jensen, and although this work lasted for about three years, he says that he felt miserable all of the time and that he was continually racked with cough. Leaving there, he secured work driving a wagon for the Lassen Lumber Company, in California, quitting after about two weeks because the work was too hard. He consulted another physician, now deceased, who advised him that his heart and lungs were weak and that he should go into the desert and not do any work. He then secured work on a ranch owned by one Baldwin, for about four months. After a vacation of some months he again secured work on a ranch, which lasted through the fall. He left there to return to the Baldwin ranch for another five months. Following this he took another vacation and then worked at icing refrigerator cars in the desert for five or six weeks. He went to Las Vegas, Nev., and worked on the state highways from August, 1925, to November, 1927. From December of that year until April, 1928, he worked in a garage, but says that he was off "quite a bit" during that time. He then was ill in bed for about forty-five days and did not work from April to November. He says he tried to work at odd jobs following this period, but was unable to do any heavy work. From October 21, 1930, until December 15th he worked for the state of Nevada as a traffic officer and again from February, 1931, to May, 1932. This work consisted in driving an automobile on the state highways and checking automobile licenses. The many doctors he consulted, so he testified, treated him for heart trouble and cough. He says that all of his jobs were light, that they were "old men's jobs," easy ones, and required little physical exertion.

Plaintiff's witness Frank Guseville, for whom he worked about four months from December, 1927, to March, 1928, testified that he knew him since 1920, but the testimony as to Deadrich's health related only to the period of employment and not before. This is true also with regard to the witness Cashman, who said he knew plaintiff for over twenty years, but whose testimony related only to 1928, when Deadrich worked for him. The plaintiff's wife knew him only since 1926. Two brothers and a sister testified on behalf of the plaintiff, and their testimony was to the effect that he was unwell at the time of his separation from the service, and plaintiff's stepmother also testified in the same vein, by deposition. His sister testified that plaintiff went to live at her home after his discharge from the army; that at that time he showed "signs of physical infirmities"; that "he was in bed a great deal of the time and he coughed violently" and that "after a coughing spell he would be very weak"; that he was unable to sleep indoors.

Other lay witnesses, friends and co-workers, testified in his behalf, but the testimony of two of them, his fellow highway workers, related only to the period 1925-1927.

 Four medical men gave their testimony in behalf of plaintiff. Two of them were of opinion, in response to hypothetical questions, that Deadrich was totally and permanently disabled during 1918. Under U. S. v. Stephens, 73 F.(2d) 695, decided by this court on November 13, 1934, this particular kind of opinion evidence is inadmissible. If we disregard this opinion evidence, the other testimony of these two doctors, neither of whom treated plaintiff before 1926, can have little bearing on his condition prior to lapse

of his policy in 1919. A third doctor, who first treated plaintiff in 1925, testified that the heart condition existed at the time of his first examination. The fourth testified that he had examined plaintiff in March or April, 1920, and found him suffering from chronic bronchitis and myocarditis. He further testified that at that time Deadrich was unable to follow any substantially gainful occupation. This last statement must be disregarded for it amounts to a conclusion of law, it being for the court to determine what is a "substantially gainful occupation," under the law.

Turning to the records, we find plaintiff on March 22, 1919, answering "OK" to the question: "Have you any reason to believe that at the present time you are suffering from the effects of any wound, injury or disease, or that you have any disability or impairment of health, whether or not incurred in the military service?" in the Report of Physical Examination of Enlisted Man Prior to Separation from Service. In his discharge appears: "Physical condition when discharged: Good." He was examined three times by the doctors of the United States Veterans' Bureau in Los Angeles, February 6, 1928, February 21, 1929, and April 22, 1930. Each examination showed chronic myocarditis, severe, and the latter two, in addition, deafness. In the second examination Deadrich complained, " * * * Have been laid up in bed considerably since I was here last," and in the latest, he said, "I think my condition is worse. * * *" According to the evidence there has been a marked decline in his health during the recent years.

Of the witnesses for defendant, one Foster, an assistant secretary for the Standard Oil Company, testified that his records showed that Deadrich, before being employed by the company, underwent a physical examination at the hands of the company doctor and was passed by him for employment.

Two of his employers, including one for whom he worked for three years, testified that he was never absent from his work, and one said that he never complained about his health and that his services were satisfactory. Another, for whom plaintiff worked for over a year, characterized Deadrich as "the best hand I ever had."

In view of Lumbra v. U. S., 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492, it may be significant to note that he did not make application for compensation until January 9, 1928, and his claim for insurance is dated April 22, 1931, eleven years from discharge.

The Supreme Court of the United States said, in Schuylkill & D. Improvement Co. v. Munson, 81 U. S. (14 Wall.) 442, 448, 20 L. Ed. 867: " * * * Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. [Cases cited.] Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. [Cases cited.]"

Slocum v. New York Life Ins. Co., 228 U. S. 364, 369, 33 S. Ct. 523, 525, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, says that the Supreme Court " * * * often has said, that when, on the trial of the issues of fact in an action at law before a Federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party. * * *"

See Baltimore & Ohio R. R. Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169, 69 L. Ed. 419; Gunning v. Cooley, 281 U. S. 90, 93, 50 S. Ct. 231, 74 L. Ed. 720; Hirt v. U. S., 56 F.(2d) 80, 82 (C. C. A. 10); F. W. Woolworth Co. v. Davis, 41 F.(2d) 342, 347 (C. C. A. 10).

" * * * The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility. He has the same opportunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record, and when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by in-

structions to that effect, an appellate court will pay large respect to his judgment. * * * " Patton v. Texas & P. R. Co., 179 U. S. 658, 659, 21 S. Ct. 275, 276, 45 L. Ed. 361.

Discussing the circumstances under which a court may withdraw a case from the jury, the Circuit Court of Appeals for the Sixth Circuit in Travelers' Ins. Co. of Hartford v. Randolph, 78 F. 754, 759, said: "* * * the jury should be permitted to return a verdict according to its own view of the facts, unless upon a survey of the whole evidence, and giving effect to every inference to be fairly or reasonably drawn from it, the case is palpably for the party asking a peremptory instruction. * * * On the other hand, a case cannot properly be withdrawn from the consideration of the jury simply because, in the judgment of the court, there is a preponderance of evidence in favor of the party asking a peremptory instruction. If the facts are entirely undisputed or uncontradicted, or if, upon any issue dependent upon facts, there is no evidence whatever in favor of one party, or, what is the same thing, if the evidence is so slight as to justify the court in regarding the proof as substantially all one way, then the court may direct a verdict according to its view of the law arising upon such a case. * * * "

It is said in Phœnix Ins. Co. v. Doster, 106 U. S. 30, 32, 1 S. Ct. 18, 20, 27 L. Ed. 65, that: "* * * Where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions, as to the principles of law involved. It should never be withdrawn from them, unless the testimony be of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it. [Cases cited.]"

Where the court may not permit a verdict to stand, in opposition to the evidence, it would be an idle gesture to send it to the jury, knowing full well that the jury has the right to find, upon the evidence, for only one party and that a verdict the other way must be set aside. In the instant case the evidence was such that the jury could not properly return a verdict for the plaintiff. In this state of the facts, the court would have been compelled to set aside such a verdict. Obviously, the only proper thing for the court to do, under the circumstances, was to direct a verdict for defendant and thus prevent a miscarriage of justice.

Another and well-settled rule is that where testimony is positively contradicted by the physical facts neither the court nor the jury can be permitted to credit it. U. S. v. Harth, 61 F.(2d) 541, 544 (C. C. A. 8). And this is so, even where such testimony is uncontradicted by other testimony. Missouri, K. & T. Ry. Co. v. Collier, 157 F. 347, 353 (C. C. A. 8); American Car & Foundry Co. v. Kindermann, 216 F. 499, 502 (C. C. A. 8); U. S. v. Hill, 62 F.(2d) 1022, 1025 (C. C. A. 8); F. W. Woolworth Co. v. Davis, supra; U. S. v. McCreary, 61 F.(2d) 804, 808 (C. C. A. 9). Appellant's work record positively contradicts his testimony. He worked for one employer continuously for three years; for another for over a year; for the state of Nevada, on the state highways, for over two years; and as a traffic officer for the same state for over a year and a half— not to mention several shorter terms of employment between times. See Nalbantian v. U. S., 54 F.(2d) 63 (C. C. A. 7). In Gregory v. U. S., 62 F.(2d) 345, 346 (C. C. A. 4), the trial court directed verdict for defendant, and in affirming the judgment the appellate court said: "* * * plaintiff was unquestionably suffering from a valvular heart leak resulting in a permanent disability. It is clear, however, that this disability was not total. While it was the occasion of suffering to plaintiff from time to time, and rendered it impossible for him to do hard manual labor, it did not prevent his doing lighter forms of work or engaging with reasonable regularity in substantially gainful occupations. * * * "

The burden was upon appellant to show by a preponderance of the evidence that he was totally and permanently disabled during the life of the policy. Keelen v. U. S., 65 F.(2d) 513 (C. C. A. 5). This burden is not carried by leaving the evidence in the realm of speculation. U. S. v. Howard, 64 F.(2d) 533, 534 (C. C. A. 5); U. S. v. Owen, 71 F.(2d) 360 (C. C. A. 5); U. S. v. Kerr, 61 F.(2d) 800, 803 (C. C. A. 9). If the testimony leads as reasonably to one hypothesis as to another, it tends to establish neither. Eggen v. U. S., 58 F.(2d) 616, 620 (C. C. A. 8).

Appellant did work, not spasmodically, but apparently continuously for long periods of time to the entire satisfaction of his employers, and at substantially gainful occupations. How can it be said that he could not work, when in fact he did work? U. S. v. Rice, 47 F.(2d) 749 (C. C. A. 9); U. S. v. Alvord, 66 F.(2d) 455 (C. C. A. 1). Plain-

tiff says that his jobs were "old men's jobs," but it is not necessary that a person be able to follow his pre-war occupation to avoid being classed as totally and permanently disabled. That plaintiff's health should have so left him during the last few years is indeed regrettable, but that fact cannot be made to refer back to June of 1919, when he had in the interim worked at substantially gainful occupations.

Appellant testified that he was advised by doctors that he should rest and not work, but that because of necessity he was compelled to work. There was no showing that he had dependents whom he was obligated to support, nor was there any showing that hospitalization had been refused him by the government.

"* * * An insured who is suffering from a curable disease cannot through his own neglect and inaction permit the disease to progress to the incurable stage, and then assert a liability on his insurance contract on the ground that the disability was permanent at its inception, without some proof thereof." U. S. v. Ivey, 64 F.(2d) 653, 654 (C. C. A. 10).

In U. S. v. Wilfore, 66 F.(2d) 255, 256 (C. C. A. 2), where plaintiff, while in service in France, was gassed and contracted pneumonia, influenza, and spinal meningitis, from which latter disease he was suffering at the time of his discharge, the court said: "But the government is not liable on this policy for a total disability occurring subsequent to its lapse, even though it be shown that the total disability was caused by conditions which arose while the policy was in force; * * * and the fact that a disability arising during military service is found to be incurable, long after the policy has lapsed, while some evidence of conditions existing at the date of lapse, is not of itself evidence from which a jury can find that the ailment was in fact incurable at the earlier date. * * *"

This court said, in reversing a judgment for plaintiff in U. S. v. Hainer, 61 F.(2d) 581, 583: "* * * He may have worked under difficulties, but there is no sufficient showing that he was unable to do what he did do. The evidence, without substantial conflict, shows that his condition was progressive, and that he did not become totally and permanently disabled until long after his war risk insurance policy had expired."

Although we have viewed the evidence in the light most favorable to plaintiff, because of his work record, our necessary disregarding of the opinion evidence, the fact that most of the witnesses did not testify as to the period when the policy was in force, and the long delay in bringing suit, we are constrained to hold that the trial judge did not err in directing a verdict for the defendant.

Judgment affirmed.