**CORRIGAN v. UNITED STATES.**
No. 7909.

Circuit Court of Appeals, Ninth Circuit.
March 2, 1936.

Hawley & Worthwine, Jess Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellant.

J. A. Carver, U. S. Atty., and E. H. Casterlin, and Frank Griffin, Asst. U. S. Attys., all of Boise, Idaho, Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Robert F. Klepinger, Atty. Department of Justice, of Washington, D. C., for the United States.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

In an action brought to recover on a war risk insurance policy, the trial court directed a verdict in favor of the government, and from the adverse judgment entered, plaintiff appeals.

Plaintiff enlisted in the United States Army, June 24, 1918, and was honorably discharged, January 31, 1919. The insurance policy upon which the action is based was issued on June 29, 1918, and was in force until August 31, 1919. The claim for disability payments, which was made on June 19, 1931, was denied on May 25, 1932, and this action was filed on May 31, 1932.

Error is assigned to the ruling of the court excluding evidence and to the ruling of the court on the motion for a directed verdict.

Dr. Newton, while testifying for plaintiff, was asked a hypothetical question, in which the diagnoses of other doctors were included, and his opinion was asked "what, if anything, * * * Mr. Corrigan was suffering from between the time that he went into battle in France in October, 1918, and August 31, 1919, assuming the truth of the facts that I have given you." An objection of the government was sustained. The appellant contends before us that the question was proper, but merely gives as a reason therefor, "This court has not excluded expert opinion evidence in response to a hypothetical question."

Webster defines "diagnosis" as "conclusion arrived at through critical perception or scrutiny." We believe the question was objectionable because it would permit the expert to base his opinion on the opinions of other experts. In Laughlin v. Christensen (C.C.A.8) 1 F.(2d) 215, 219, it is said: "It is the rule that it is not allowable in asking a hypothetical question to incorporate into it the opinion of another expert. [Citations.]" See, also, 22 C.J. 640.

An objection was properly sustained to the following question: "Q. Where a man is poisoned with gas and it is still classified as acute six weeks after he is gassed in the lungs, and six weeks later it is still classified as acute, would you say that it is a serious case of gassing or one where you expect a rapid recovery?" As the question is framed, it calls for an opinion, based on two other opinions, and is therefore objectionable as pointed out above.

Complaint is also made to the ruling of the court sustaining an objection to the last of the questions contained in the following testimony:

"Q. What is the result and effect of that condition, of that destruction by the gas of those parts of the lungs, that you have described, insofar as the æration of the blood is concerned, does it limit the æration? A. Yes, sir.

"Q. Just what does it mean? A. Aeration of the blood means transfer of oxygen from the air that is taken into the lungs through the walls—the alveoli—and capillaries that surround these alveoli, to the blood,—to the blood corpuscles which carry the oxygen. If the amount of air that can be taken into the lung is diminished

then necessarily the amount of oxygen that goes to the lungs is diminished.

"Q. What effect does 'that have on the individual's ability to work? To labor?"

There was further testimony of Dr. Newton as follows:

"Q.. What was your diagnosis, Doctor? A. My diagnosis was that this man had a chronic mitral heart lesion; that he had some enlargement of the heart; that he had chronic bronchitis and emphysema.

"Q. Is emphysema the result of some disease? A. Or injury.

"Q. What is the effect of· this condition that you have described to a man's ability to breathe or take oxygen into the system? A. It impairs the ability of the individual to ærate or oxygenate his blood because of the decreased amount of air that can be taken into the lungs and out, in any given time.

"Q. Does that affect his ability to work?"

Objection to this question was also sustained.

Appellee contends that to permit the witness to answer these questions would be tantamount to permitting the witness to express an opinion on the whole merits of the case, contrary to the rulings of this court in United States v. Young, 73 F.(2d) 690; United States v. Baker, 73 F.(2d) 691; United States v. Stephens, 73 F.(2d) 695, and Deadrich v. United States, 74 F.(2d) 619.

We see no objection to such testimony as called for by the questions. Such questions are not equivalent to asking whether or not a person is totally and permanently disabled as prohibited by the cases cited. The answers might well be that such a condition slightly impairs an individual's ability to work. The fact that no particular kind of work is specified seems to be no objection, because it is ·obvious that the impairment would be greater in particular kinds of employment, and the expert would doubtless qualify his answer, but if he did not do so, the government would have opportunity to fully go into the matter on cross examination. We hold such testimony to be admissible.

■ The same expert testified that he was the owner of a 2000 acre ranch and that he hired men to do the work thereon, and then testified:

"Q. Have you hired men to do work? A. Yes, sir.

"Q. Have you been out during the summer and watched them work there? A. Yes, sir.

"Q. Tell us what you have seen them doing?" ·

The objection of the government to the last question was properly sustained. The matter called for by the question was immaterial, had no tendency to qualify the witness as an expert, and had no bearing on the issue as to whether or not plaintiff was permanently and totally disabled.

■■ The same expert was asked: "Q. I will ask you whether you have an opinion as to whether Mr. Corrigan in his condition could perform the duties of a farmer, such as shoveling dirt to irrigate, handling sacks of grain, operating a mowing machine and doing plowing?" The government's objection was sustained. Of course, proof of the fact that plaintiff was unable to follow the occupation in which he was engaged prior to the alleged disability does not establish the totality or permanency of his disability. Miller v. United States, 294 U.S. 435, 441, 55 S.Ct. 440, 79 L.Ed. 977; Lumbra v. United States, 290 U.S. 551, 559, 54 S.Ct. 272, 78 L.Ed. 492. In 22 C.J. 661 § 758, it is said: "In the field of medical knowledge, a wide range is necessarily allowed in the reception of the inferences of observers and the judgments of experts. A person skilled in matters of medicine and physiology may state his inference or judgment with respect to the physical condition of another person, and what certain observed conditions indicate; as to the existence of a disease or injury; or as to the character of an injury. A physician may state his diagnosis of a disease, as of bodily, mental, or nervous symptoms; the occurrence of a change; the stage of development of a disease; the proper treatment to be administered, and the probable effect of a lack thereof; or whether certain treatment was proper, necessary, or sanctioned by medical usage. The witness may state the effect of injuries, and is also permitted to state the effect of given conditions or occurrences, on the body, mind, or nervous system of the person affected, or· the extent and character of the disability resulting therefrom. * * *"

The testimony sought by the question is not immaterial. This court has held that disability at the time of trial must be

established in order to recover. Personius v. United States (C.C.A.9) 65 F.(2d) 646. We believe such testimony to be admissible. Such evidence has a bearing on the totality of the disability, and is like other forms of evidence, to be considered by the jury. The government is properly protected under its right of cross-examination, and its right to obtain instructions fully covering the substance of the testimony.

■■ The eleventh, twelfth, thirteenth, and fourteenth assignments are contained in specification No. 3. They relate to rulings of the court during the progress of the cross-examination of the witness Barst, testifying on behalf of the government. The record discloses no exceptions to any of the rulings of the court, during the entire cross-examination, and consequently we are unable to consider such rulings. Some of the questions to which objections were sustained are: "Q. He didn't appear to you to be as strong and capable as he was before the war?" "Q. He appeared to be exhausted when he was trying to work?" "Q. Didn't you form an opinion that he wasn't able to work while he was working there for you?" With reference to these questions put to the lay witness, we call attention to the following rule in 22 C.J. 618 § 711: "When the circumstances are such that all the facts cannot be placed before the jury with such clearness as to enable them to draw a correct inference, and the province of the jury is not invaded, and the inference is not one for the drawing of which special skill, knowledge, and experience are required, an ordinary observer who has had suitable opportunity for observation may state the apparent physical condition of another person, or testify as to what are more distinctly inferences from animate bodily phenomena, as the existence of a state of apparent health, or, on the other hand, the existence of a state of apparent sickness or disease * * Such an observer may also state a change in apparent condition, whether the change is from sickness to health, or from health to sickness, or from bad to worse, or from worse to better. He may also infer and state that a person's ability to help himself, or to work, or his faculties, or the use of his limbs, or other parts of his body, or his earning capacity, has or has not been

impaired. Such an observer may also state the obvious condition and visible effect of particular injuries, or state inferences from transient physical appearances, as that a person was hurt or injured, in pain or suffering, tired * * * weak, pale, broken down. * * *"

■ The witness, Barst, had testified that plaintiff worked for him as early as 1923. In Connecticut Mut. Life Ins. Co. v. Lathrop, 111 U.S. 612, 4 S.Ct. 533, 28 L.Ed. 536, it is held that an ordinary observer may give his opinion as to the sanity or insanity of a person. It would seem that the testimony which would be elicited by the questions quoted above would be even less objectionable than the lay opinion on insanity. Such a rule is reasonable and accords even with Professor Wigmore's powerful criticisms of the opinion rule. 4 Wigmore on Evidence (2d Ed.) §§ 1917–1929.

At the conclusion of the evidence, the trial court sustained the motion of the government for a directed verdict, saying: "The record is such that it leaves the evidence in the realm of speculation, we find that the plaintiff did work when he had work to do, and at substantially gainful occupations. The test is could he work, not that he did not work, and the mere fact that he was not employed during certain periods of time, is not proof that he was unable to work. During the periods of time plaintiff did work, he did receive substantial amounts of money for that work, for the work he did. Therefore, viewing this evidence as I do, and the statement made by the defendant at the time of discharge that he was in good health. The long delay in bringing suit, I am compelled in view of the law now applicable, to grant the motion of the defendant to direct a verdict for the defendant for the reason that total and permanent disability during the life of the policy has not been established by the plaintiff."

■ If the evidence admitted, together with that offered, but erroneously excluded, is insufficient to support a verdict in favor of appellant, the exclusion of such evidence is not prejudicial error. There have been many expressions by this court as to the sufficiency of the evidence to support a verdict.[1] Many of these refer to decisions of

[1] United States v. Meserve (C.C.A.) 44 F.(2d) 549, 552; United States v. Stamey (C.C.A.) 48 F.(2d) 150, 152; United States v. Lawson (C.C.A.) 50 F.(2d) 646, 651; United States v. Burke (C.C.A.) 50 F.(2d) 653, 656; Sorvik v. United

**110**

the Supreme Court in regard thereto. In a case such as this, where the defendant has moved for a directed verdict, it is the court's duty to determine whether or not the evidence tending to support plaintiff's case is substantial. If evidence has been introduced by plaintiff, but it is not substantial, the court must grant the motion; but, on the other hand, if such evidence is substantial, the motion should not be granted, and it is for the jury to determine whether or not they believe it.

It is apparent from the statement of the trial judge that one of the principal reasons for his action in directing a verdict for appellee was the appellant's work record. It is no longer open to question that a work record may have the effect of negativing the claim of total and permanent disability. Lumbra v. United States, supra; United States v. Spaulding, 293 U.S. 498, 505, 55 S.Ct. 273, 79 L.Ed. 617, and the multitude of cases decided by this court. However, plaintiff made an offer of proof as follows: "In view of the further qualification of the Doctor, we make offer to prove that in his opinion, from physical findings by him, and the diagnosis to which he testified, that in his opinion that the said diseases mentioned, impaired the ability of plaintiff Corrigan to perform the duties of a farmer in this community, or the duties of a farmer, and further that performing the duties of a farmer would be injurious to Mr. Corrigan." This offer was excluded. Appellant had a right to negative the effect of the work record by evidence that the performance of work impaired his health. The offer is some evidence to that effect, inasmuch as most of the work performed consisted of farm work.

In considering the sufficiency of the evidence, we must take the view of the evidence most favorable to the veteran. United States v. Meserve (C.C.A.9) 44 F. (2d) 549, 552. In view of the very many rulings excluding evidence which ought to have been admitted, and the effect of the evidence offered by appellant, we cannot say that such rejection is not prejudicial.

Reversed and remanded.

States (C.C.A.) 52 F.(2d) 406, 410; United States v. Hill (C.C.A.) 61 F.(2d) 651, 652; United States v. Kerr (C.C.A.) 61 F.(2d) 800, 803; United States v. Albano (C.C.A.) 63 F.(2d) 677; United States v. Dudley (C.C.A.) 64 F.(2d) 743, 744; Falbo v. United States (C.C.A.) 64

F.(2d) 948, 949; United States v. Alger (C.C.A.) 68 F.(2d) 592, 593; United States v. Burleyson (C.C.A.) 64 F.(2d) 868, 872; Nichols v. United States (C.C.A.) 68 F.(2d) 597, 599; Deadrich v. United States (C.C.A.) 74 F.(2d) 619, 621.