**ROBERTS v. UNITED STATES.**

No. 1731.

District Court, D. Idaho, S. D.

Dec. 24, 1936.

Delana & Delana, of Boise, Idaho, for plaintiff.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Dist. Attys., all of Boise, Idaho, and Luke Kavanaugh, Sp. Atty., Department of Justice.

CAVANAH, District Judge.

A directed verdict for the defendant was granted, and the plaintiff now moves for a new trial.

The principal grounds urged by the motion are: (1) That there was sufficient evidence presented to require the court to submit the case to the jury and (2) newly discovered evidence.

The first inquiry is, Does there appear sufficient substantial evidence to sustain a verdict for the plaintiff? If not, then it becomes the duty of the court to direct a verdict for the defendant after applying the principles recognized by the Supreme Court and the Ninth Circuit Court of Appeals.

(a) Where the court has said in the case of Small Company v. Lamborn & Company, 267 U.S. 248, 254, 45 S.Ct. 300, 303, 69 L.Ed. 597, "The rule for testing the direction of a verdict, as often has been held, is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury has met with express disapproval in this jurisdiction, as in many others," and where the Ninth Circuit Court of Appeals has said in the case

642

of *Atchison, T. & S. F. Ry. Co. v. Spencer,* 20 F.(2d) 714, 717, in approving the rule laid down by the Supreme Court of the United States in the case of *Barrett v. Virginian R. Co.,* 250 U.S. 473, 39 S.Ct. 540, 63 L.Ed. 1092, "whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court."

(b) That the opinions of medical witnesses that work impaired plaintiff's health are *without weight* as to the plaintiff's being totally and permanently disabled before his policy lapsed if there is substantial evidence showing that he did in fact work to the extent of establishing his ability to work with reasonable regularity. The Supreme Court in the case of *United States v. Spaulding,* 293 U.S. 498, 505, 55 S.Ct. 273, 276, 79 L.Ed. 617, said: "the opinions of respondent's medical witnesses that work impaired his health and tended to shorten his life had no substantial bearing upon the question whether total disability while the policy was in force continued during the subsequent years. As against the facts directly and conclusively established, this opinion evidence furnishes no basis for opposing inferences."

(c) Long delay in bringing suit is to be taken as strong evidence that the plaintiff was not totally and permanently disabled before the policy lapsed. The Supreme Court as to this principle said in the case of *Lumbra v. United States,* 290 U.S. 551, 560, 54 S.Ct. 272, 276, 78 L.Ed. 492: "His conduct following the alleged accrual of his claim reflects his own opinion as to whether he was totally and permanently disabled at the time of the lapse. His own statements to medical men, their diagnoses, his repeated applications to the government for compensation, and his failure earlier to assert any claim, show that for a decade he did not believe that he was *totally and permanently* disabled when he let his policy lapse May 31, 1919. And in the absence of clear and satisfactory evidence explaining, excusing, or justifying it, petitioner's long delay before bringing suit is to be taken as strong evidence that he was not totally and permanently disabled before the policy lapsed."

With these principles in mind we find that in substance the evidence discloses that the plaintiff immediately upon leaving the service worked at farm work for his father for eight months receiving the sum of $100 per month, and he continued from then on until 1924 doing general farm work such as plowing, harrowing, haying, etc., as the evidence of a large number of his neighbors established that fact, and in 1920 and 1921 he put up from sixty to eighty tons of hay. He assisted in the construction of a ditch in 1920 or 1921, which was about a mile long. At times he operated two farms and assisted in logging *for a period of two to three weeks,* and when so logging he drove four horses hitched to a spool cart on which were heavy logs, some being five feet in diameter, and made about twelve trips a day, *without assistance,* from the timber to the mill and at that time did not show any signs of weakness. It appears that he has not attempted to do any other kind of work than farm work and the hauling of the logs. The mere fact that relatives and others assisted him in working on the farms, at times, which he was operating, would not of itself establish total and permanent disability, after it was shown by the great weight of the testimony that he did in fact do hard work for a number of years immediately after leaving the service and the lapse of the policy.

It seems that plaintiff's present illness commenced in 1924. He did not, prior to 1931, apply for hospitalization. Two doctors testified to examining him and that he was not totally and permanently disabled. When in disposing of the motion for a directed verdict I referred to the evidence in substance, and since then and on the present motion I have checked the testimony and am unable to reach any other conclusion than was reached at the time that the motion for directed verdict was granted. So, in view of the convincing testimony by some nine witnesses presented by the government to the effect that the plaintiff did do hard work over the years mentioned and his own admission in writing as late as 1931 (Plaintiff's Exhibit 8 and Government's Exhibit 12), in which he stated that immediately upon leaving the service in 1919 he had done farm work for his father for eight months, receiving $100 per month, places the evidence in such a condition that the testimony leads as reasonably to one hypothesis as another, and therefore tends to establish neither, and, if so, plaintiff failed to establish his cause of

action. This principle was recognized by Judge Garrecht in the case of Deadrich v. United States (C.C.A.) 74 F.(2d) 619, 622, where it is stated: "If the testimony leads as reasonably to one hypothesis as to another, it tends to establish neither. Eggen v. United States, 58 F.(2d) 616, 620 (C.C. A.8)."

It would seem from the testimony as a whole that it cannot be said that the plaintiff could not work, when in fact he did hard work during the years mentioned, immediately upon leaving the service and, if that fact clearly appears, it is evidence that he did not become totally and permanently disabled until long after his war risk insurance policy had expired.

Reliance is had on the case of Corrigan v. United States, 82 F.(2d) 106, 109 (C.C. A.9), which does not apply to the grounds upon which the motion for new trial in the present cause are predicated, for in that case the court dealt with the rule as to the rejection of certain testimony and not as to the situation we have here, where the medical opinions were admitted relative to whether or not work would impair the health of the plaintiff, whereas in the Corrigan Case such opinions were rejected by the trial court and in that case we find the court used the following language: "If the evidence admitted, together with that offered, but erroneously excluded, is insufficient to support a verdict in favor of appellant, the exclusion of such evidence is not prejudicial error." So the conclusion I am forced to reach in the present case is that taking the medical opinion as to whether work would impair the health of the plaintiff together with the other evidence in the case is insufficient to support a verdict in favor of the plaintiff, and therefore it is apparent that the Corrigan Case has no application here.

The principle (c) as to the long delay in bringing suit, of course, is to be applied to the particular facts in each case and, if the explanation given by the plaintiff is to be accepted as sufficient one as to why he delayed in bringing suit from the time his policy lapsed in April, 1919, until March 19, 1932, the time of the filing of his complaint, then the principle recognized by the Supreme Court in the case of United States v. Spaulding, supra, could never be applied, as all the plaintiff would have to say was that he did not know that he had a policy or that there was a law allowing him the right to recover thereon, until a long time after the policy lapsed. It would seem unreasonable to say that the plaintiff did not know that he had an insurance policy with the government, as the amount of the premiums on these policies were held out of the veteran's monthly pay while in the service.

The affidavits presented on the ground of newly discovered evidence relate to questions of fact which are either cumulative or in the nature of impeachment and, that being the case, they do not warrant the court in granting a new trial based thereon.

For the reason above stated, the motion for a new trial is denied.