**WALTERS v. UNITED STATES.**

**No. 6538.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 9, 1933.

Chester F. Clark, of Fort Worth, Tex., for appellant.

Eric Eades, Chief Atty., Veterans' Administration, of Dallas, Tex., and John W. Beveridge, Asst. U. S. Atty., of Fort Worth, Tex., for the United States.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellant brought suit to recover on a policy of war risk insurance of $10,000. The case was tried to a jury and resulted in a verdict for defendant, on which judgment was entered. This appeal followed. For a better understanding of the errors assigned, a brief statement of the material facts appearing from the record will be helpful.

Appellant was granted an honorable discharge for disability on February 28, 1919. The discharge did not state the nature of the disability. Premiums on the policy had been paid through February, 1919. None has since been paid. Appellant testified that he was in the hospital at Camp Travis from August 8, 1918, to February, 1919, and his complaint was diagnosed as tuberculosis; that he ran a temperature, his chest bothered him, he had night sweats and had a cough, lost some weight but had no hemorrhages; that after his discharge he returned to Thurber, Tex., where he had lived prior to being inducted into the army; that he returned to work in a coal mine at Thurber; that he had a cough and pains in the head and was not able to work steadily. His foreman testified that he worked about the same as the other miners and was paid at the rate of $4.36 a day. He worked at the mine from March 24, 1919, through October, 1919, earning approximately $670. He testified he was examined by Dr. Bloodworth in Fort Worth, in September, 1919, and was sent to a government hospital at Alexandria, La., and was there examined; that he stayed only ten days, leaving of his own accord. He signed and swore to an application for compensation on October 23, 1919, in which he stated that he was then in the United States hospital at Alexandria. In this application he also stated that he was not confined to bed and did not require constant nursing or attendance and that he was willing to accept medical treatment if furnished. From his own testimony it appears that after that through February, 1924, he was in at least six other government hospitals. He left all the hospitals of his own accord and against medical advice. He was granted compensation at the rate of $30 a month and was given back compensation amounting to about $200. Later his compensation was raised to $80 a month and again to $100 per month. He was classed as totally and permanently disabled and paid the monthly installments on his policy until he had received some $1,400. Later, the veterans' bureau discontinued this on the ground that it had been granted through mistake of law and fact. He worked for the Texas Highway Department from May, 1925, to April, 1927. He started at about $90 a month, was raised to $150 a month and from September 26th to April 27th was paid at the rate of $175 a month. During all this time he acted as foreman of a gang repairing the roads. He testified that he was suffering with his chest and had to stay in bed many days, the men going to him and reporting to him. He was examined by Dr. Baldridge in July, 1922. Dr. Baldridge testified he found a lung condition and thought if appellant took care of himself and secured an arrested condition then light forms of occupation, out of the dust, would not hurt him. He was examined by Dr. Wagley in September, 1925, and treated for three days. Dr. Wagley found that he was suffering with tuberculosis. He was again examined by Dr. Wagley on February 18, 1930, and the physician found his condition about the same. He had several spots on his lungs. He was examined by Dr. Gormany in July, 1926, and he also diagnosed his ailment as tuberculosis. He was again examined by Dr. Gormany on February 18, 1930, and was found in about the same condition. Dr. Bloodworth was not called as a witness and there was no other medical testimony.

In the course of the examination of appellant it developed that he had bought and sold about seven automobiles, on which, he testified he had made about $100. On cross-examination he was asked the following question, "And everyone of them was stolen, weren't they?" This was objected to on the sole ground that it would tend to incriminate him. He then testified that he did not know they were stolen until after he had disposed of them; that he was arrested in connection with this transaction. He was also asked, in substance, if he had not engaged in bootlegging. He admitted that he had pleaded guilty to the possession of beer and had been fined $100, but explained this by testifying that he had rented a house and had subrented a room to another man who had the liquor in his possession. This evidence was also objected to on the ground that it would tend to

incriminate him and no other. The government produced as a witness one D. S. Bradford, who testified that he was a deputy sheriff and had known appellant for about 20 years, knew him when he was employed in the mines and he had investigated the automobiles handled by appellant. After objections had been sustained to several questions asked this witness, he was asked, "What was Mr. Walters doing when you did get in touch with him?" This was objected to but on what grounds does not appear. The objection was overruled and the witness answered, "I caught him as he was catching a train at Eastland that night." It is urged that the answer tended to show consciousness of guilt on the part of appellant by flight. In the course of the examination regarding the handling of these cars the court had stated as follows: "It is for the purpose of showing the business engaged in. If it happened to be unlawful it would not make any difference, not so far as this case is concerned and I would place what I think is the proper limitation on the evidence after it is in."

It is apparent that the answer was hardly responsive to the question. Appellant had already testified that he had been arrested in connection with the automobile transaction, so the answer of the deputy sheriff did not tend to contradict him on a collateral matter. It is not shown that any charge was ever made against him in connection with the handling of the automobiles and the charge for bootlegging had been settled. In no possible way could these questions and answers have tended to incriminate appellant. And considering the statement of the court, it is not likely that that part of the evidence would prejudice the jury in any way against him.

In considering these objections it must be borne in mind that the witness was the plaintiff in a civil case. Had he been the defendant testifying for himself in a criminal prosecution a different rule might apply as it is generally incompetent to show that the accused had been concerned with other and different illegal transactions or convicted of other offenses not felonies. The reason for excluding such evidence in a criminal case is that it might have a tendency to lead the jury to believe the defendant would be guilty of the crime of which charged. No such effect on the minds of the jurors would result from the cross-examination of a witness in a civil case. The most effect it could have would be to tend to impeach his veracity.

We consider that immaterial for the following reasons.

The burden was on appellant to show, by a clear preponderance of the evidence, with reasonable certainty, that he was both totally and permanently disabled at the time the policy lapsed for nonpayment of premiums. Eggen v. U. S. (C. C. A.) 58 F.(2d) 616; U. S. v. Rentfrow (C. C. A.) 60 F. (2d) 488. It would not be sufficient to show that he was totally and permanently disabled some time thereafter. Nor that he was totally but not permanently disabled at the time. Nor that he was permanently but not totally disabled. Giving full effect to his testimony and that of the doctors, it falls short of sustaining this issue. We may take notice as a matter pertaining to public health that today it is generally considered that many cases of tuberculosis in the earlier stages may be cured by proper treatment. Jacobson v. Massachusetts, 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765. It is evident that, when appellant was discharged from the army, his tuberculosis was in the earlier stages. He was afforded every opportunity to receive adequate treatment without expense in government hospitals. While he frequently took advantage of such treatment, he always left these hospitals of his own accord, against medical advice. It was his duty to remain until cured or discharged as incurable. Putting aside his work at the mines, which probably, if continued, would have been deleterious to his health, the undisputed fact that he worked for the Texas Highway Department for approximately two years at regular and substantial wages and was not discharged for physical unfitness would go far towards showing that he was able to continuously engage in a gainful occupation long after the policy had lapsed. The court charged the jury fully and fairly on the law applicable to the case, did not accentuate or even refer to the evidence objected to, and told the jury they might consider the fact that appellant was paid installments under the policy. It does not appear that any objection was made to the charge or that any special charges were requested. If it was error to admit the testimony objected to, it did not affect the substantial rights of appellant and it was harmless.

Other errors are assigned but they require no discussion. The record presents no reversible error.

Affirmed.