## UNITED STATES v. LYNCH.

### No. 6918.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1933.

Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and Eric Eades, Chief Atty., Veterans' Administration, and Murray L. Crosse, Atty., Veterans' Administration, both of Dallas, Tex., for the United States.

W. E. George, of Wichita Falls, Tex., and V. H. McClintock, of Paducah, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

In March, 1931, Earl Lynch, an overseas veteran, died of pulmonary tuberculosis in a United States hospital. On November 27, 1931, appellee brought this suit for himself and as administrator to recover on a war risk insurance policy, making the usual allegations of total and permanent disability while the policy was in force, and of claim filed and disagreement with the director. Tried to a jury, it resulted, after defendant's motion to instruct had been overruled, in a verdict for plaintiff. The United States appeals, assigning one error, the refusal of the general charge, and asserting that no case for a jury verdict was made out.

Like in so many of these latterday suits, brought after time has made manifest and sealed the fatal character of an affliction, the contest here is not over whether it finally became total and permanent, but over when it became so. In these cases, the plaintiff relying in part on the outturn to show that the totality and permanence of the affliction was in the lifetime of the policy then revealed and known, or if then unrevealed and unknown, it did then in fact exist, stresses the long view of the veteran's life, and its end. The defendant, on the other hand, stresses a foreshortened view, focused on the service period, the time when the policy was in force, and demanding that the long view be rejected as misleading, insists that in law and in fact one cannot be said to be totally and permanently disabled within the life of his policy unless he shows a total impairment then existing, "based upon such conditions as render it reasonably certain to last throughout his life." U. S. v. Hill (C. C. A.) 62 F.(2d) 1022, 1024; Eggen v. U. S. (C. C. A.) 58 F.(2d) 616. It argues that this is particularly true of tuberculosis in its early stages. While undoubtedly the existence of pulmonary tuberculosis, even though not in an extremely advanced state, could within the meaning of a war risk policy render one totally disabled, because of his inability to work at any gainful occupation without injury to his health, it does not at all follow that such condition would render one permanently disabled, for yielding as it many times does to proper treatment, something more must be shown than that during the life of the policy, it was present in active

form. It is because of these considerations that the tendency manifested in the earlier decisions, U. S. v. Godfrey (C. C. A.) 47 F. (2d) 126; U. S. v. Sligh (C. C. A.) 31 F.(2d) 735; U. S. v. Phillips (C. C. A.) 44 F.(2d) 689; to regard proof of active tuberculosis and death later resulting, as sufficient proof of both totality and permanence within the life of the policy has been greatly checked, if not altogether reversed in some of the circuits, by the requirement that proof should be made not only of the early tubercular condition, but that it had failed to yield to the indicated simple treatment; or, putting it another way, that the permanence of the condition finally established was not the result of neglect of such treatment. Eggen v. U. S. (C. C. A.) 58 F.(2d) 616, 617; Hirt v. U. S. (C. C. A.) 56 F.(2d) 80; Nicolay v. U. S. (C. C. A.) 51 F.(2d) 170, 171; Falbo v. U. S. (C. C. A.) 64 F.(2d) 948; Walters v. U. S. (C. C. A.) 63 F.(2d) 299; U. S. v. Linkhart (C. C. A.) 64 F.(2d) 747. In that same circuit, however, three days after the Linkhart Case was decided, the Bass Case (C. C. A.) 64 F.(2d) 467, 470, came down, sustaining a verdict of the jury in a typical tubercular case on the authority of the earlier cases cited in it.

■ Turning now to the record in the case, for its facts, for on them the decision must at last depend, we find them told there simply, clearly and without dispute. Made up from government medical records obtained while in and since his discharge from the service, and of the oral testimony of plaintiff, his wife and their neighbors, the record makes out this case. Sound and well when he enlisted on April 5, 1917, his condition changed while in the service, and beginning when admitted to the infirmary with influenza, later diagnosed as lobar pneumonia, he was placed under observation for pulmonary tuberculosis, a history of frequent hospitalizations unfolds. In hospital for thirty-five days in January and February, 1918. On August 13, 1918, admitted to Camp Hospital No. 42 A. E. F. for suspected tuberculosis; admitted again November 17, 1918, for bronchitis, in January, 1919, for bronchitis, when moist and dry rales through both lungs were found, and yet again in February, in March and April, 1919, for the same, he was finally returned to the United States, and in May, 1919, transferred to Convalescent Center, Camp Travis, Tex., and then discharged. Upon discharge he went to his brother's farm where, cared for by his family, he remained until, entering the government hospital at Seguin in 1927, he died there in 1931. During that time, by the undisputed testimony of every witness, he did no continuous work because he was not able to. His brother, on whose farm he lived, did all the farming, requiring and expecting nothing of Earl. All of the testimony, lay and medical, supports the jury's finding that he was tubercular, all of it supports their conclusion that from the time he came out of the army he was never able to follow continuously any gainful occupation, and all of it that he never got any better, but on the contrary declined more and more until his death. The only evidence tending to show neglect on his part to take proper treatment to cure or arrest the disease, is the testimony of plaintiff's witness, Dr. Rochelle, who, having testified that Earl Lynch did have tuberculosis, and that he was never able to make his living by working, testified further on cross-examination, "I think I recommended at the time of the examination of Earl Lynch that he had to have a different climate. I said on the examination report I made of him that I advised him to change climate and take treatment, and that, like most early cases, he did not believe he had it and would not take my advice."

It is clear that this single circumstance, as matter of law, does not make out a case demanding a verdict for defendant. The trial judge thought the case one for a jury verdict. We think he was right. The judgment is affirmed.