**UNITED STATES v. BURNS.**

No. 7248.

Circuit Court of Appeals, Fifth Circuit.

March 19, 1934.

John W. Holland, U. S. Atty., and Wm. A. Paisley, Asst. U. S. Atty., both of Jacksonville, Fla., for appellant.

Ray C. Brown and L. A. Grayson, both of Tampa, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action, begun in June, 1932, on a war risk insurance policy which was issued to the appellee in October, 1917, and, by reason of the discontinuance of the payment of premiums, was not in force after May, 1921. The appellee claimed that he was totally and permanently disabled prior to the lapse of the policy. His claim was sustained by the judgment appealed from. Errors were assigned on rulings on evidence, and on the denial of a motion, made upon the conclusion of the evidence, that a verdict in favor of the defendant (the appellant here) be directed. The following is an outline of the state of facts shown by the evidence: The appellee is a civil engineer by profession. Just prior to his entry into the Army in May, 1917, he was in the employ of the Interstate Commerce Commission in doing field engineering work incident to the physical valuation of railroads and railroad property. He received successively commissions as second lieutenant, first lieutenant, and captain of engineers. While at the front in France, appellee inhaled phosgene gas, and he got a little mustard gas on the lower part of the right leg. The phosgene gas affected his bronchial tubes and throat, with the result that for a short period every morning since then it is hard for him to breathe; that he has had bronchitis, and attacks of pleurisy, which cause him to be laid up for periods of from a few days to two weeks at a time. Since leaving the Army he has been treated for pleurisy on an average of three or four times a year. The mustard gas at intervals caused the lower part of his right leg to burn and itch. At the time of the trial it had been a year since he had had one of those attacks. In September, 1918, while traveling at nighttime and at high speed in the side car of a motorcycle driven by another man a shell hit in the road ahead, the appellee was thrown forward into the shell hole, and was injured in one knee, in his hips, back, and shoulders, and was bruised across the stomach. Appellee was not sent back to duty after the just mentioned occurrence. After he was returned to this country he was in the Walter Reed Hospital from June, 1919, to November, 1920. While there his right knee was twice operated on, and cartilage was removed from the inside of the knee. Appellee has had more or less stomach trouble since he was thrown into the shell hole in 1918. Since that time he has continued to have trouble with his back, at times having severe pains extending down his legs. Since his knee was operated on it has not functioned normally, with a result that appellee cannot get around without artificial help, having to use rubber bandages, rubber sockets, and leather and metal braces. He has difficulty in stooping, and cannot raise one of his arms horizontally higher than his shoulder. At times he has been confined to his house with rheumatism or arthritis. Since 1918 it has been uncomfortable for him to sit in one position; his right leg getting numb. His eyesight has been somewhat impaired. He stated that he suffers pain and discomfort whenever he works. After appellee's discharge from the Walter Reed Hospital he went to Florida. Upon the government offering him vocational training, he took training for fifteen months in caring for orange groves. Soon after coming to Florida appellee made arrangements with a Mr. Sanford for taking care of his orange grove, containing 80 acres. He was married in 1921, and he and his wife lived on the Sanford grove property from 1921 to the date of the trial. Throughout that period he was in the employ of the owner of that grove, Mr. Sanford, until his death, and thereafter his widow, though during that period he did work for others. He looked after em-

ployees on that grove all that time, with the exception of the time he was with the Plant Board. Most of his work there was supervisory in its nature, but he did some of the labor himself. In doing his work there he used a car most of the time. Most of the work there, is done from October until about the first of July. When he started work there his pay was $2 a day, and was increased to $2.25 a day, and later to $2.50 a day. He worked at that grove from the time he went there until the date of the trial, but not all the time. Sometimes he worked at other groves. Appellee did map checking work for the Federal Plant Board from the first part of October, 1929, until March 30, 1930, and he did inspection work for that board from July to November, 1930, but during those periods he did not work every day, and the map work was all done from a car by checking county records. The inspection work was done with a crew of men, and most of the time appellee stayed in the car and did the recording. For the work he did for the Plant Board appellee received 45 cents an hour for a 44-hour week. Between the date of the lapse of the policy and the date of the bringing of this suit appellee sustained several accidental injuries, which resulted in adding to his bodily troubles. Three physicians testified as witnesses for the appellee. The testimony of two of those physicians (one of whom stated that he had treated appellee at more or less frequent intervals since 1921) had no tendency to prove that appellee was totally and permanently disabled at the time the policy lapsed. The testimony of the other of those three physicians (Dr. McRea) showed that he first examined the appellee about ten days before the trial, and that he made that examination for the purpose of testifying in the trial. That witness in his direct examination testified as to the appellee, when he was examined, narrating a history of his case. The appellee's counsel asked the witness the following question: "From your examination of this man, Doctor, what in your opinion is his condition as to whether or not he is totally and permanently disabled from carrying on any gainful occupation continuously. That does not mean that a man cannot work at times but it does mean whether or not it is injurious to his health or whether it would aggravate his condition or involve the risk to his health?" In response to that question the witness said: "I would consider him permanently disabled." Appellee's counsel then asked the witness: "And totally disabled from the history of his case?" The witness replied: "Yes sir, that is, in the condition

that he is in." Thereupon the court propounded the question, "The condition that you find now, and the history of his case, taking it all into consideration, can you give us an opinion as to whether he was totally disabled in November, 1920, when he was discharged from the hospital and sent to Florida?" the witness answered: "In my opinion I think that man was totally disabled at that time." On his cross-examination that witness stated: "My testimony or opinion that he was totally disabled when he was discharged from the Army is based upon my examination and the record that he had in the Walter Reed Hospital."

 The facts of appellee's delay of more than eleven years before bringing suit, and that throughout that time, except when temporarily disabled by illness, suffering, or weakness, he was engaged in some substantially gainful occupation, put upon him the burden of proving by clear and satisfactory evidence that he had suffered "total permanent disability" before his policy lapsed. Lumbra v. United States, 54 S. Ct. 272, 78 L. Ed. ——; Wise v. United States (C. C. A.) 63 F.(2d) 307; Walters v. United States (C. C. A.) 63 F.(2d) 299. We are of opinion that the record does not show that such evidence was adduced in the trial. While the evidence fairly may be regarded as sustaining a finding that, prior to the lapse of the policy, by reason of injuries appellee had sustained while in the Army, his physical capacity was so permanently impaired as to prevent him from engaging in some occupations which previously he could have followed, and to handicap him to some extent in pursuing any substantially gainful occupation which he might engage in, it fell short of showing that, within the meaning of the policy, he was totally disabled while the policy was in force. The evidence furnished no substantial support for a finding that at the time of the trial the appellee's bodily condition was materially worse than it was when the policy lapsed, except in so far as it was made worse by injuries sustained after the lapse of the policy. Appellee's disability while the policy was in force was not made total by the fact that any work he might undertake was attended with discomfort, pain, and occasional illnesses, resulting in temporary interruptions, if the doing of the work did not involve a risk of seriously impairing his health or aggravating the ailments from which he suffered. Lumbra v. United States, supra; White v. United States (C. C. A.) 53 F.(2d) 565; United States v. Martin (C. C. A.) 54 F.(2d) 554; United States v. Harth (C. C. A.) 61

F.(2d) 541. It cannot reasonably be said that a man is not able to follow any substantially gainful employment when with substantial continuity he works in gainful employments for a period of more than eleven years, and his bodily condition is not materially worse at the end of that time than it was at the beginning of it. United States v. Wilson (C. C. A.) 50 F.(2d) 1063.

 The above-mentioned statement by Dr. McRea of his opinion that appellee was totally disabled when he was discharged from the hospital and sent to Florida was devoid of probative value. The testimony of the witness shows that his opinion was based solely on what appellee told him a few days prior to the trial as to his injuries and bodily ailments, and on the record he had in the Walter Reed Hospital. The testimony of the witness fairly negatives the conclusion that he had any knowledge or information as to the work appellee did between the date of the lapse of the policy and the date of the examination by the witness, or as to the effect or lack of effect of that work on appellee's bodily condition and ailments. The witness lacked knowledge or information of facts which constituted a material part of the history of appellee's case. A basis of the stated opinion of the witness was a history of appellee's case which did not disclose facts which constituted a material part of the history of that case disclosed by evidence before the jury. It is fairly inferable that the case upon which the witness gave his opinion was substantially different from the one which the jury found from the evidence. The premises from which the witness reached his conclusion not including material facts disclosed by the evidence, those premises were inadequate to support an opinion as to the case which it is to be inferred was found by the jury from the evidence to be the real one. Raub v. Carpenter, 187 U. S. 159, 161, 23 S. Ct. 72, 47 L. Ed. 119; Northwestern Mut. Life Ins. Co. v. Muskegon Nat. Bank, 122 U. S. 501, 7 S. Ct. 1221, 30 L. Ed. 1100; United States v. McGlue, 26 Fed. Cas. 1093, 1095, No. 15,679; Kempsey v. McGinniss, 21 Mich. 123, 137; 1 Wigmore on Evidence (2d Ed.) 1079; Jones Commentaries on Evidence (2d Ed.) § 1334.

Furthermore, the circumstances attending the statement of the witness of his opinion that the appellee was totally disabled at the time referred to raise a doubt as to his attributing to the words "total disability" the meaning which was conveyed by the allegation of the appellee's petition as to appellee being totally disabled while his policy was in force.

In our opinion the evidence furnished no substantial support for a finding that the appellee was totally disabled while his policy was in force. The above-mentioned ruling was erroneous. Because of that error the judgment is reversed.