818

## UNITED STATES v. BECKER.
### No. 5697.

Circuit Court of Appeals, Seventh Circuit.

Dec. 8, 1936.

Thomas E. Walsh, of Washington, D. C., James R. Fleming, U. S. Atty., of Fort Wayne, Ind., Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., Will G. Beardslee, Director Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C., for the United States.

Floyd O. Jellison, and Lewis J. Murphy, both of South Bend, Ind., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY, and BALTZELL, District Judges.

LINDLEY, District Judge.

The government appeals from a judgment rendered in favor of appellee upon a contract for war risk insurance benefits.

Appellee enlisted in the army on April 16, 1917; went overseas in December, 1917, and remained in France and Germany until his return to America and discharge on September 6, 1919. Upon his entry, he applied for and obtained insurance, the premiums for which were deducted from his pay until January 24, 1919, when he formally canceled his contract, while still in service in France.

The question involved is whether he was totally and permanently disabled at the time of this cancellation, or, prior to March 3, 1919, the end of the period of grace.

Subsequent to the cancellation, during the early part of 1919, while in the army, he worked as a tailor until March, when he took a two weeks trip to Nice. There he received a gonorrheal infection, for which he received treatment until May, 1919. On June 25, 1919, he went to an army hospital for treatment of acute sciatica and for mental observation. He remained in hospitals up to the time of his discharge in September following. At the time of his discharge, he signed a statement that he had no reason to believe that he was suffering from the effects of any wound, injury, or disease, or that he had any disability or impairment of health. His commanding officer certified to the same effect, and the examining surgeon certified that he was physically and mentally sound and capable of carrying on his former occupation in a shirt factory. At the trial he denied the truth of his statement made to the authorities and attempted to excuse the same.

Eight days after returning home he went to work at the factory of the Wilson Shirt Company, where he worked as a shirt cutter for $125 per month until November 20, 1919. He then worked for about a month for the Western Electric Company at $75 per month. On December 8, 1919, he applied for compensation, claiming difficulty in breathing, pains in the lungs and spitting of blood, attributing the same to gassing experienced in April, 1918. No mention was made of rheumat-

ic pains. He worked for a short time for the Oliver Plow Company at 45 cents an hour, or $88 per month, and left because he was discharged. From January 8 to April 4, 1930, he worked for the Kokomo Brass Company, receiving total compensation of $359.74. He returned to the Oliver Plow Company in May, 1920, and remained there until August 6th of that year at the same wages as formerly. He reported to the government that in November, 1920, he was employed by the Lee Overall Company at $30 a week from August to October, 1920, but denied the truth of this on the witness stand. He was employed by the Indiana Bell Telephone Company from November 30, 1920, to February 10, 1921, at $120 per month, working in a garage, being laid off because of lack of work. He then secured employment with the Studebaker Company for approximately five months. After that he was out of employment for some time, returning on November 16, 1921 to the Telephone Company as ground and cable man, being paid $3.20 per day up until April, 1922, when he was removed to a garage and his pay raised to $95 per month. He remained with the company until March 27, 1923, his salary being increased to $105 on September 1, 1922, and remaining at that figure until he ceased work. During this period of time, he oiled and greased cars, but was unable to wash them because of rheumatism.

This covers his employment up to the end of 1923. He claims to have been irregular in his labor, but the records indicate that generally he worked rather satisfactorily at all the various employments.

During the years from 1924 to 1927 he worked irregularly as a fruit salesman in South Bend, Ind., earning from $20 to $25 a week. On July 21, 1931, he reported to the government that from 1924 to 1928 he had been engaged in the trucking business and that he had earned enough to live on; but at the time of the trial he denied the truth of this report. For the first six months of 1928 he was employed by the Berland Shoe Stores at South Bend, receiving wages of about $23 per week.

He was in the Great Lakes Hospital from June 22, 1928, to March 5, 1930. He has been married twice, once in 1921 and again in 1930. He now lives with his wife in their own home, where they operate a soft drink establishment. He says he does little work. He now has an arthritic condition, which has reached the point where the bones in his neck have ankylosed with his spine so that he cannot bend his head back or turn it from side to side, unless he moves slowly.

In view of our conclusions it seems unnecessary to discuss in detail the medical testimony. From it it appears, however, that at the present time he is probably totally and permanently disabled because of arthritis with resulting ankylosis. There is no testimony in the record, however, that would justify a finding that he had such arthritis at the time he surrendered his insurance, other than the testimony of the physician who qualified as an expert and who based his testimony upon the report of the development of the disease to its present status.

█ We are of the opinion that the court should have directed a verdict for appellant, on the ground that there is no substantial evidence that the appellee became permanently and totally disabled during the life of his contract of insurance and prior to its cancellation or expiration date, March 3, 1919. The evidence is such as to leave entirely to speculation and conjecture the degree of disability at the requisite time. This is true of both the medical and lay evidence. Consequently there was nothing for the jury except speculation. Such is not sufficient. United States v. Krueger, 77 F.(2d) 171 (C.C.A.7); Deadrich v. United States, 74 F.(2d) 619 (C.C.A.9); United States v. Burns, 69 F.(2d) 636 (C.C.A.5); United States v. Brown, 76 F.(2d) 352 (C.C.A.1).

█ Furthermore there was a record of remunerative work performed by plaintiff after the time when he claims to have become totally and permanently disabled. Such a record is inconsistent and irreconcilable with a finding of total and permanent disability. United States v. Krueger, 77 F.(2d) 171 (C.C.A.7); United States v. Crain, 63 F.(2d) 528 (C.C.A.7); Deadrich v. United States, 74 F.(2d) 619 (C.A.9). In addition, his own statements and actions are such as to refute his claim of total and permanent disability in 1919. This court said in United States v. Crain, 63 F.(2d) 528, 531 (C.C.A.7): "The amount of work that he did and the length of time he was employed and the wages he received are positively inconsistent with the conclusion that he was totally and permanently disabled at the time his policy lapsed."

Retroactive diagnoses of medical experts are highly speculative and do not rise to the dignity of proof when refuted by the inconsistent acts of the appellee. United States v. Krueger, 77 F.(2d) 171 (C.C.A.7); United States v. Hill (C.C.A.) 62 F.(2d) 1022; United States v. Matory, 71 F.(2d) 798 (C.C.A.7); United States v. Burns, 69 F.(2d) 636 (C.C.A.5).

It may be that appellee is now suffering from a major disability, but appellant is not liable to pay insurance benefits because of a disease which has developed progressively in recent years, unless it was of such character as to produce total and permanent disability at the requisite time. United States v. Driscoll, 80 F.(2d) 59 (C.C.A.7).

Accordingly the judgment of the District Court is reversed and remanded, with directions to grant a new trial.