## UNITED STATES v. FAIRBANKS.

### No. 8196.

Circuit Court of Appeals, Ninth Circuit.

May 3, 1937.

950

John B. Tansil, U. S. Atty., of Butte, Mont., and Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and W. Clifton Stone and Keith L. Seegmiller, Attys., Dept. of Justice, both of Washington, D. C., for the United States.

Molumby, Busha & Greenan, of Great Falls, Mont., for appellee.

Before GARRECHT and HANEY, Circuit Judges, and NETERER, District Judge.

GARRECHT, Circuit Judge.

This is an appeal from a judgment of the trial court in favor of the plaintiff on a policy of war risk insurance. Pursuant to stipulation filed, the cause was tried to a court without a jury and findings of fact and conclusions of law were made and entered.

Frank R. Fairbanks, plaintiff-appellee, enlisted in the United States Army October 5, 1917, at Fort Benton, Mont., and went to France with his company. On July 19, 1918, he was wounded by explosive machine gun bullets at the battle of the Somme near Soissons, Chateau Thierry, while engaged in certain extrahazardous duty. He was given first aid and left lying on the ground; later two of his comrades assisted him back of the lines. As they were taking him along a road a shell exploded close by, knocking them down and again wounding Fairbanks. His wounds were in the stomach, hip, and knee. He was taken to a base hospital and later to Paris, where he was operated upon; some pieces of lead were removed from the wound in his stomach and other pieces

from his hip. Afterward he was taken to a hospital at Savenay for treatment. His wounds remained open for a long time. He returned to the United States aboard a hospital ship, landed at Newport News, Va., and was assigned to a hospital at Fort Des Moines, Iowa. After being discharged from the Army December 23, 1918, at Camp Funston, Kan., he went to his parents' home in Kansas, some distance from Kansas City. He was examined prior to discharge, and, in the Report under "Declaration of Soldier," in response to the question, "Have you any reason to believe that at this present time you are suffering from the effects of any wound, injury, or disease, or that you have any disability or impairment of health, whether or not incurred in the military service?" he answered, "No." The accompanying certificate of examining surgeon stated that he was physically sound with the exception of certain scars, originating in the line of duty, which were not likely to result in disability; that his physical condition was excellent; and that "all scars [were] due to flesh wounds." Fairbanks testified that he had crutches with him when he appeared for this examination, but left them outside of the examination room because "I was afraid they would keep me for a while and I wanted to get home for Christmas."

It must be noted in this connection that when Dr. F. E. Keenan, who had treated Fairbanks, was on the stand he was interrogated by the court with reference to the operation record and the medical reports and on cross-examination by the Government's attorney it was brought out that these records showed that there was an infection of the abdominal wounds and they were kept open for a long time; that the wounds suffered by plaintiff would not normally be referred to as flesh wounds; that the wound in the thigh destroyed the muscles in his right hip which absolutely disabled him and accounted for his limp.

In the spring of 1919 Fairbanks returned to Geraldine, Mont., to resume farming. He had left his farming equipment with a friend, Mr. Homer Taylor, with whom he stayed for two months after arriving in Montana in that year. His wounds were healed, but very tender and he did no work, although he says he tried. After resting at the Taylor place, Fairbanks leased a farm close by and secured a few cows. At this time he also had a

homestead at Havre, Mont., but soon gave it up because his physical condition was such he could not go on with it and prove up. With the help of Taylor and a Mr. Clancy he put in a little wheat and milked the cows. Referring to his condition during the summer of 1919, he said: "I was knocked out quite a lot, and I tried my best to overcome it." A woman attached to the Fort Benton Red Cross found him ill in bed about this time and she prevailed upon him to visit a doctor. He was suffering from sharp pains in the stomach. The doctor said that not much could be done for him, but gave him some medicine to ease his pain and told him to go to some Veterans' Hospital.

Fairbanks testified that in the fall of 1919, because he was physically unable to pump the necessary water he left this farm and moved to another place about two miles distant. Here he remained for two years, putting in crops and having help for both the planting and harvesting.

About this time he had an operation to remove two pieces of shell from his abdominal cavity and to cut the adhesions which had resulted from his original wounds and which were believed to be causing his suffering. His appendix was removed during this operation, but apparently the two pieces of shell were not. During this time he was being taken care of as a Government case. After two or three months in the hospital he returned to his farm. Shortly thereafter in 1921 while operating a harrow in the field he collapsed, and was taken back to the doctor.

In May, 1921, he took up vocational training. He was enrolled to take a regular commercial course and first given training in bookkeeping but being indoors did not agree with him and he was out quite a little and he did not get on well, so he transferred to a course in animal husbandry. He attended this course at the Montana State Agricultural College during part of the winter of 1921-1922. He was then sent home to his own ranch to continue his course in project training. He remained on his ranch from April 1, 1922, to October 23, 1922, being paid by the Government approximately $100 per month. Fairbanks was married in October, 1922, and since then his wife assisted him in his farming operations, doing what he could not do himself. He returned to the Agricultural College on October 23, 1922, and remained there until February 15, 1923, again returning to his ranch for further project training. While at his ranch this training was conducted through a correspondence course, and he was visited from time to time by a supervisor or agent from the school, who made reports to the Veterans' Bureau. The plaintiff also had medical attention while attending school. He had a good crop on the farm in 1923, but had help to sow and to harvest.

In 1924 he bought a farm on installment contract and at the time of trial still owed the major part of the purchase price.

In 1925 he was under observation in a Government hospital, but he decided against an operation at that time. The doctors prescribed a diet for him, which he testified he tried to follow, but that it was difficult because "it is hard to get stuff we should have for such a diet." Again, in 1931, he went to the hospital, but the doctor there said that he did not advise any further operations. He further testified that he was told by the doctor on this occasion that nothing could be done for him, so he returned home to his farm; he tried to follow the diet prescribed to the best of his ability.

He received assistance from the Government, from the time of his discharge, either rehabilitation pay or compensation. He further testified that he gained nothing from his ranching, other than a place to live; that his farming operations were of no material aid to him financially; that his compensation and rehabilitation pay provided his livelihood.

His sister was on the ranch with him in the two years following 1920; she cooked, took care of the place, and helped with the chores. He stated that at no time following his discharge from the Army was he able to sow or harvest a crop without obtaining help from some one else.

Fairbanks' hip is painful during cold weather; the wound in his left leg causes cramps occasionally; the wound in his knee does not bother him.

He said that at the time of the trial he was virtually in the same condition as when discharged.

On cross-examination it was brought out that he had, at the time of the trial, twenty-four head of cattle, six horses, a few chickens, and one sow; that he had a hired man; that he lived in town while the children were going to school; that he had

some farm machinery; that he had owned a tractor, but sold it. It also appeared that the plaintiff had transferred from the commercial course to animal husbandry of his own volition and had a Dr. Southmayd write a letter to the Federal Board of Vocation Education stating that his physical condition was such that the doctor approved the change. A Diary and Time Record kept by the plaintiff while on project training was put in evidence by the Government to show what Fairbanks did each day over a period of several months. This evidence indicated that plaintiff, during the period, had worked about 4 hours a day.

It was also brought out that Fairbanks had appeared before the Veterans' Bureau rating board on May 6, 1925, and testified that he considered himself 50 per cent. disabled.

A medical history questionnaire which had been signed by the plaintiff in June, 1924, was introduced in evidence by the defendant, in which the plaintiff set forth that the adhesions caused him pain during cold weather or after exertion; that he complained of "a pulling sticking feeling in my abdominal wound and pain in right hip at times"; that after exertion the pain was so intense as to keep him from standing or walking erect.

Lay witnesses for the plaintiff testified that before the war Fairbanks was strong and vigorous, capable of all kinds of farm labor, but that since his return he was weak and incapable of doing farm work; that he seemed sick; that he was unable to ride a tractor and could not endure exertion; that he would work for a bit and then be compelled to rest. It appeared that Fairbanks collapsed once in 1921 and again in 1928; that he was taken to the hospital; that he suffers from soreness of the stomach and pains in his leg; and that if there was any change in his condition since 1923, it was a little worse. Neighbors helped him with his crops, he had hired help much of the time, and, considering the help he received, he was not successful in his farming, according to the opinion of his neighbors.

Three medical witnesses appeared for plaintiff, the first of whom, Dr. J. H. Irwin, examined Fairbanks four times; the earliest examination taking place October 8, 1920, and the latest, a few days before trial. At each examination it was found that Fairbanks was suffering from severe abdominal adhesions due to gunshot wounds. The prognosis made at the time of the first examination stated that the abdominal wound would probably always cause some trouble. The doctor was then of the view that Fairbanks was able to resume his former occupation and he advised it, but he found that the plaintiff had a major vocational handicap. The next examination, four months later, caused Dr. Irwin to report that the patient was not able to resume his former occupation. The doctor had first advised an operation to relieve the adhesions, but subsequent examination disclosed that the operation had not greatly benefited the plaintiff or alleviated his condition. Dr. Irwin also expressed the opinion that work would be likely to aggravate Fairbanks' condition. The doctor, on the third examination, reported that he looked for no improvement.

Dr. F. E. Keenan, who examined the plaintiff in March, 1931, found him suffering from multiple adhesions of the intestines. The doctor further stated that the plaintiff would be subject to a temporary period of abdominal pains and discomfort every time he attempted a heavy lift or extra strain, which would have a tendency to upset nerve circulation and cause nausea and vomiting and might be so severe as to cause unconsciousness. He believed that the condition was permanent and that surgery would afford no relief.

Finally, Dr. Morton H. Axline testified that he, in the company of two other doctors, examined the plaintiff on March 20, 1931, and found him to be suffering from severe and extensive abdominal adhesions. At that time Fairbanks was in the hospital for 20 days for treatments, which did not relieve his condition and were discontinued; the findings, on examination for discharge from the hospital, were practically the same as on admission. The attacks suffered by plaintiff usually continue for two or three hours, forcing him to bed until they pass away.

Lay witnesses for the Government, from the Veterans' Bureau, testified that Fairbanks carried on the work assigned to him satisfactorily; that he was a hard worker; that his ranch was one of the best appearing in the community; that he farmed intelligently and was successful from both a business and physical standpoint. Two of the witnesses had visited the plaintiff's farm, each on one occasion, while the third had not, but stated that his

knowledge was based upon records and papers. Another lay witness for the Government, also from the Bureau, testified that he visited the plaintiff two or three times in the spring of 1923; that plaintiff was doing very little; that he had a man working for him; that he was making the least headway with his crop.

These witnesses had little independent recollection of the facts but relied almost entirely on reports made to the bureau and they were unable to say whether the reports were made up from their own observations or based on what they had been told.

The Government's medical witness, Dr. Fred B. Nather, was a specialist in X-ray work. He said that he had taken certain X-rays of Fairbanks while a barium meal was passing through plaintiff's intestines and that the passage of the meal through the intestines was apparently normal.

The Government had introduced no witnesses at the original hearing but, after the plaintiff rested his case, its counsel made a motion for judgment and the plaintiff, immediately thereafter made a similar motion for judgment in its favor. After about five months' delay, the case was apparently reopened and the Government called its witnesses, whereupon plaintiff offered testimony in rebuttal. At this time it was stipulated that $10,000 war risk insurance had been taken out by plaintiff and remained in force until the date of his discharge. At the close of all the evidence the motions for judgment were renewed by both parties.

■ During the trial the court permitted counsel for plaintiff to ask certain hypothetical questions calling for opinions of medical witnesses on the question of total and permanent disability, and the witnesses to answer, over objection by defendant's counsel. No point is made of this by counsel for the appellant. If the case had been tried before a jury this would have been reversible error, but being tried to the court, the inadmissible evidence is deemed disregarded. In fact, the court in its opinion specifically said: "Opinion evidence such as the higher court has ruled out has been disregarded in this case."

■ The Government cites cases wherein the work record of the insured was held to show that the insured was not totally and permanently disabled, even though the work was accompanied by pain or discomfort or that the disability "bothered." But the holdings are uniform that the work must be such as does not aggravate the condition of the insured. Cf. United States v. Baker (C.C.A.9) 73 F.(2d) 691, 695; United States v. Shashy (C.C.A.5) 75 F.(2d) 422, 425; United States v. Burns (C.C.A.5) 69 F.(2d) 636, 638. In this latter case the court said: "Appellee's disability while the policy was in force was not made total by the fact that any work he might undertake was attended with discomfort, pain, and occasional illnesses, resulting in temporary interruptions, if the doing of the work did not involve a risk of seriously impairing his health or aggravating the ailments from which he suffered."

■ The work record of plaintiff substantiates, rather than refutes, his claim of total and permanent disability. The Circuit Court of Appeals for the Tenth Circuit said in United States v. Mathis, 84 F. (2d) 451, 452: "He has made sincere attempts to support himself but his only successful venture was in the poultry business where his wife did a substantial part of the work. His work record tends to establish rather than refute his claim of disability."

In his opinion the judge of the District Court (17 F.Supp. 550, 553) among other things said:

"This soldier volunteered on a mission that required great courage and was almost certain to end in death or serious bodily injury. He escaped with his life, but was literally shot to pieces, receiving six serious wounds. Months of hospitalization, medical and surgical care, followed these injuries. That he was totally disabled for a long period of time and while his insurance was in force is an established fact to begin with. Next his own statement shows that down to the date of trial he has not been able to follow continuously a substantially gainful occupation. * * *

"Not counting the number of physicians and surgeons who treated the soldier for several months after he was wounded, whose names might not readily be obtained, it will be found that the list from 1920 to time of trial is quite formidable. Here are some of the names: Drs. Murphy, Anderson, Whitehead, Southmayd, Fortin, Irwin, Keenan, Nather, Axline, Waters, Lohman, and Walker. Several of them have examined and treated him on different occasions and on widely separated dates. The

954

inevitable deduction from this medical testimony is, that plaintiff has been suffering for many years from extensive adhesions as a result of his abdominal injuries, and that he is subject to pain and stomach attacks upon slight exertion, and that this condition cannot be cured either by operation or treatment and will probably continue indefinitely. * * *

"But, notwithstanding his training and the favorable outcome, his own testimony, and that of his neighbors, and physicians who have examined and treated him during all these years, make it plain that he has never been able to carry on continuously according to the accepted definition. Counsel for the government refer to his healthy appearance on the witness stand; it is true that his appearance and speech betokened the same manly courage that marked his career as a soldier; he apparently tried to walk erect and without limping. As a witness, there was no dissembling on his part or any attempt to simulate weakness, either physical or mental; but the strained expression of his face and the restless movements of his body while testifying suggested a history of physical disability, as the evidence later disclosed, that had hampered his efforts down to that hour. The court believes that, if it had not been for the considerable sum paid him monthly by the government during all these years, and especially during the period of training, his farming operations would have resulted in total failure."

It must be remembered that the trial judge not only had the advantage of observing the demeanor of the witnesses and hearing them testify as to the injuries, wounds, scars, symptoms, and ailments of the plaintiff, but also the added favorable circumstance of having these wounds and scars described and indicated and located on the bared body of the plaintiff exhibited in chambers in the presence of doctors and attorneys.

After reviewing the evidence at length, the court said: " * * * it must be remembered that his physical breakdown resulted in total disability which continued for many months, to begin with, and occurred at the time when his insurance was in full force—that is an established fact; now then, add to that the evidence which clearly shows that his physical condition was such that he has never been able to carry on, during all the intervening years, without a goodly supply of money every month and plenty of help besides, even to the extent of doing the ordinary chores about the place, and from that it would seem that the greater weight of the evidence should be held to establish the contention of plaintiff that he was totally and permanently disabled at a time when his insurance was in force."

The findings of the court are supported by the evidence, and the judgment is affirmed.