## UNITED STATES v. ATCHLEY.

### No. 2072.

Circuit Court of Appeals, Tenth Circuit.

Dec. 3, 1940.

Keith L. Seegmiller, of Washington, D. C. (Summerfield S. Alexander, U. S. Atty., of Topeka, Kan., Charles L. Chalender, Atty., Department of Justice, of Kansas City, Mo., and Julius C. Martin, Director, Bureau of War Risk Litigation, and Fendall Marbury, Sp. Atty., Department of Justice, both of Washington, D. C., on the brief), for appellant.

Robert E. Russell and C. A. Magaw, both of Topeka, Kan. (Clayton E. Kline, M. F. Cosgrove, and Balfour S. Jeffrey, all of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit on a contract of war risk insurance. Plaintiff was honorably discharged in April, 1920, and the only question presented for determination is whether the finding of the trial court that he became totally and permanently disabled prior to discharge and while the policy was in force is clearly wrong. In determining that question the evidence should be viewed in the light most favorable to plaintiff, and all inferences should be drawn in his favor which are fairly deducible from the facts. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Bodge, 10 Cir., 85 F.2d 433.

The burden rests upon plaintiff in a case of this kind to show that he became totally and permanently disabled before the policy lapsed, that is to say, that he suffered an impairment of mind or body which rendered it impossible for him to follow continuously any substantially gainful occupation. But a bedfast condition is not a prerequisite to recovery upon the contract. United States v. Rye, 10 Cir., 70 F.2d 150; United States v. Thomson, 10 Cir., 71 F.2d 860; United States v. Bodge, supra. An insured who can work only spasmodically, with frequent interruptions or changes in employment necessitated by his condition, cannot be said to be able to follow continuously a substantially gainful occupation within the meaning of the policy. Nicolay v. United States, 10 Cir., 51 F.2d 170; United States v. Rye, supra; United States v. Thomson, supra.

The evidence adduced at the trial tended to establish these facts. The insured went into active combat in the St. Mihiel area early one morning in September, 1918, followed tanks through barbed wire entanglements and German trenches, and was in the thick of a terrific military engagement until about four o'clock in the afternoon, at which time a shell bursted only about six feet from him and he was blown in the air and seriously wounded. After remaining on the battlefield in an unconscious condition for several hours, he regained consciousness and walked part way and was carried part way to a first-aid station in the rear where he underwent an operation. He remained continuously in hospitals, some in France and others in the United States, until soon after his discharge from military service in April, 1920, for disability incurred in line of duty. Ever since his injury, his left arm has been almost useless, and the left side of his body, face and head have been partly numb. The injury caused him to bleed at the nose and right ear, and for sometime after his discharge he bled at the nose intermittently, particularly when he endeavored to work. He is deaf in his right ear, his ear and head ring and roar, and he is unable to locate sounds. At frequent intervals he becomes dizzy, has nervous spells, his entire body shakes and trembles, he feels trembly inside, he suffers severe pain which originates in his left arm and goes up his arm, across his back to his spinal column, and thence to the back of his head. During such spells, he

sometimes falls in a chair, on the bed, or on the floor. He was given vocational training as a watchmaker, and he later did some work as a watchmaker. But due to impaired use of his arms he encountered difficulty in picking up and handling tools and parts, a cold sweat frequently came over him, he felt a commotion inside himself, and he became nervous and shook violently, all of which made it necessary that he leave his work until he relaxed and became composed. He was also given vocational training in the poultry business. He and his wife, to whom he was married while a patient in a hospital in Illinois, entered the poultry business. Most of the money used in the business was hers, and she or someone else helped with practically all of the work. When he did any work he seemed tired and fatigued, and sometimes became faint and dizzy. His wife was a practical nurse and she frequently treated him with hot compresses and cold baths, mostly on his spine. He left his wife in 1924, traded his automobile for a houseboat and equipment, and drifted rather aimlessly downstream for approximately three hundred miles to a small town in Arkansas, being en route about three months. After landing in Arkansas he was employed for eight or ten months operating a small ferry across the river. That required very little physical work, the volume of business was small, and his half of the revenue amounted to only six or eight dollars per month. A large ferry was then placed in service, he undertook to operate it, but he fell in a faint the first day and was forced to give up the job. He married in Arkansas and has two children, but since giving up the job on the ferry he has done practically nothing except to fish some, hunt some, do little odd jobs about the house and garden, and help saw enough wood for home consumption. He acquired only a sixth grade education, and now has the mental capacity of a twelve-year old boy. It was the expert opinion of certain physicians who testified in the case that his condition was permanent and that he was unable to do ordinary work without injurious effect. There was substantial countervailing evidence, including reports of medical examinations made from time to time, and the making of an application in 1926 for a policy of insurance in a fraternal insurance association and a favorable medical examination thereon, but the policy did not issue. Despite the countervailing evidence, and even

though there was long delay in the institution of the suit, due regard being given to the opportunity of the trial court to observe the insured and to judge of the credibility of the witnesses, it cannot be said that the finding of total and permanent disability while the policy was in force is so clearly wrong as to require that it be overturned. United States v. Ford, 10 Cir., 71 F.2d 83; United States v. Fairbanks, 9 Cir., 89 F.2d 949.

The judgment is affirmed.